Tribal Council versus Jackson. May it please the court. My name is Jan Rutherdale, and I'm an assistant attorney general from the state of Alaska. I represent the appellant's three state employees. This morning, I'd like to focus on two problems with the district court order ruling. First and foremost, the district court ruling is on a collision course with the very recent Supreme Court cases that are strongly protective of non-member defendants. There's been three such cases in the last seven years alone. Most recently, the Plains Commerce case decided in 2008, which came out after the district court ruling. These cases make it clear that the US Supreme Court, if this case were to be before the US Supreme Court, the district court ruling that a tribe can force a non-member defendant into tribal court over conduct and actions occurring off-reservation, therefore outside of Indian country, that ruling would be reversed. On this ground alone, it would be appropriate to reverse the district court decision, for those are the facts that are squarely before the court.  the district court ruling is problematic because it doesn't address the procedural rights of the parents defending their parental rights in the tribal court, and how those procedural rights are to be safeguarded. When Congress enacted the absolute veto provision of 1911B, it was clearly intended for both parents to be able to choose state court over tribal court. Counsel, the major issue that I see you have is trying to distinguish, is it Venati? Venati. Venati versus Alaska. How do you distinguish that case? Well, Venati, two ways, Your Honor. First, with respect to the non-member defendant issue. Venati was following Montana, and Venati said that you can litigate the domestic relations over members, but this case involves non-members. So that's the first reason that Venati could be distinguished. The second was jurisdiction over member children, though that was the crucial part of the case, I thought. Well, in that case, it wasn't clear. The mother's tribal membership was clear, and that was a voluntary case. And that's the other reason, is these are voluntary cases where the parents essentially are consenting, coming into court to get this adoption accomplished, whereas this case initiated as an involuntary child protection proceeding in tribal court. Why would that make a difference? If the interest of the child is at the forefront, why would it make a difference if it's voluntary as opposed to involuntary? In both circumstances, it's the interest of the child that's paramount. Well, Congress was clearly concerned in enacting ICWA, which is discussing this whole area, was also concerned with the rights of the parents, and the state's interest, of course, too. There was a balancing act that was going on, and they struck that balance in the mechanism that they set up. And the crucial point is 1911B only applies to the involuntary child protection cases, either removal from the home or parental rights, termination of parental rights. Those are both voluntary. So Congress is making that distinction. They're clearly concerned about the parents' ability to have that absolute veto mechanism, so that they were able to choose the state forum over the tribal court forum. And those 1911B concern the off-reservation cases. So clearly, Congress is concerned about cases where a parent may not have the resources or the knowledge to object to personal jurisdiction kind of issues, and so they're making it easy for them. It makes no sense for Congress to be concerned about a parent's right to remain in state court and not be in tribal court, but not have the corresponding same rights in a tribal court action. It's the type of anomaly that Nevada v. Hicks was talking about when it was talking about how there's no right to 1983 action in tribal court, because it just didn't make sense to have this anomaly set up. And I won't go into the details, but it's in my belief. Well, let me ask you this. If we were to accept your argument, how would our holding read? The holding would read to distinguish. We hold that. We hold that because the Supreme Court clearly wants it. Well, this case involves a non-member and a non-member parent, and the Supreme Court is clear that off-reservation rights of non-members, it's never exceeded that far. It's never gone off-reservation. In this case, there is no reservations. That would be the holding of the court. So you would have us hold that no full faith and credit is due to tribal adoption decrees if? If the case initiates as an involuntary child protection action, as opposed to Venati, which was a voluntary private adoption matter, that would be the distinction. And we would cite what to support that holding? The Supreme Court cases talking about this. Montana and all of those cases, you couldn't compel that holding? Right, even I think there was a recent Ninth Circuit case, Philip Morris, that also talked about how off-land, off-the-reservation, the tribal jurisdiction over non-members don't extend that far. Now, if we're in the record of this case, do you find support for your position that the child was a non-member of the tribe? In this case, the child was a member. The child was a member, because I thought that was the crucial point in Venati, that the child was a member. Venati didn't. The problem with Venati, and the problem with the district court ruling, is that it's really mixing apples and oranges. It's taking a ICWA concept, which is child-based membership, and applying it to an inherent authority analysis. Because the Indian Child Welfare Act doesn't, I mean, there's only three bases of tribal jurisdiction. There's no treaties in Alaska. ICWA doesn't apply, because you have 1911A jurisdiction, child's domiciled on a reservation. Or you have 1911B, case initiated in state court. You also have the 1918B procedures, where the tribe can actually get a prescribed border, a limited geographic area. That didn't happen here. Or you could have a state-tribal agreement under 1919. Those are the four bases of jurisdiction. So ICWA is unambiguous. And the Indian canons of construction shouldn't apply. That's another. But you even relied on those. If you're relying on Montana, you've gone outside ICWA to look at how the Supreme Court has treated tribal jurisdiction. That's because first you look to the express wording of the Indian Child Welfare Act. Is there jurisdiction? There's the four points of jurisdiction. Those don't apply here. So then you look outside to find out if there's any other bases of jurisdiction. The third basis of jurisdiction is the inherent authority. And that's how the Montana line works. Even under those cases, though, doesn't the Supreme Court recognize that the tribes have inherent authority over domestic relations within the tribe? Among members. So that's the problem in this case. We have a non-member defendant. And that non-member defendant is not part of the domestic consideration. I mean, when you look at the domestic component of the case, it appears that that's all members. And the tribe is trying to regulate the domestic relationship among its members. The only reason a non-member is brought into the equation is because the non-member state agency would not have the adoption decree that came out of the regulation of this domestic relationship. Right. But the underlying action was the original action that got the court to the adoption was the involuntary removal of the child. A parent, the father, was a defendant in that action. And so he is a non-member. I'm not talking about the state of Alaska. I'm talking about the parent. Oh, you're saying that the father was a non-member. Correct. And therefore, Montana would preclude jurisdiction over him. Absolutely. Yeah. And there's... So the domestic relations exception wouldn't cover non-members in your view? Correct. Now, what case authority supports your argument that domestic relations exception excludes any situation where there's a non-member involved in the domestic relationship? Montana. It says... Well, Montana's not a domestic relations case. So do you have a domestic relations case that says if one of the parties to the relationship is a non-member, the tribal court loses its inherent jurisdiction over domestic relations? Do you have a case that says that? Not directly, but there's case law that when you go through the Montana exceptions and to find out if any of those exceptions apply, which would allow you to bring a non-member defendant into court, it's clear that the exceptions don't apply in this case. And one of the exceptions talks about these are very limited exceptions. And it talks about marrying, intermarriage, that sort of thing is not a consent to... consent exception. It's really limited to commercial kind of activities on reservation. There is a solution, though. And that is in the Indian Child Welfare Act sets up the solution. And that is to have a 19... under 1918, B-2, which was created. The legislative history shows it was specifically created for the problem of Alaska and Oklahoma. That solution is to have a limited geographic area, like a village. And once you get that, then you can bring it... you can have the kind of case, you can have the definition of the Indian Child Welfare Act, of the child membership, and you can bring in the non-member defendants. Because Congress expressly allowed that. And I believe it was Montana in the Strata case as well, said that you can't bring in non-members unless you have expressed congressional authorization. You do have it under 1911A. And the 1918, B-2 procedure is a way to get that definition for those defined boundaries so that you can bring them in. Is there any indication in the record whether or not the father challenged the jurisdiction of the tribal court? No. The record is that the father was given notice. But I believe the mother was the one that came into court. And I'd like to reserve the rest of your time. All right. Thank you. Thank you. Good morning. May it please the court, my name is Natalie Mandras. And I'm representing Caltech Tribal Council and the SAMS in this matter. In being a time which the state of Alaska, this circuit, of course, held that state courts and tribes have concurrent jurisdiction over Indian children who do not reside on a reservation. They also held on page 556 that the tribe's sovereign authority is presumed until Congress affirmatively acts to take it away. It also held on page 562 that neither the Indian Child Welfare Act nor Public Law 280 prevents villages from exercising concurrent jurisdiction in Alaska. And based on these core propositions, this circuit held that, quote, Alaska must give full faith and credit to any child custody decision made by the village's governing bodies in accordance with the full faith and credit clause of the Indian Child Welfare Act. The district court's decision should be formed because this case falls four square within that rule. And there is no room to move. What happened in this case and how we ended up here was because the village of Caltech was not setting up a test case from the rule. Would you speak up just a little louder? I apologize, Your Honor. People usually have the opposite complaint about me. I don't think those mics really amplify. I think they're recording. I apologize. I'll lean in. Is this better, Your Honor? They don't amplify. They don't amplify. And have people be able to hear it back there. So you have to project your voice. OK. Use your outdoor voice. Use my outdoor voice. OK, thank you, Your Honor. Well, the main point that I wanted to make about how we got here, even though this falls four square within Venati for the court's understanding, is that Caltech was not setting up a test case to try something new to expand the boundaries of their jurisdiction. They were doing what they had been doing for many, many years. The earliest record of a Caltech adoption, even within the state, recorded reports is in the 80s. And between 2000 and 2004, when the state made this policy shift to stop recognizing, even the state recognized Caltech adoptions and would send new birth certificates. They were doing as they had always done. Because this is the core right of a tribe. Along with membership is to regulate domestic relations of its members. What do you think is behind the policy shift? What reason would the state have to discontinue recognition of the adoption proceedings by the tribe? Well, I can only speculate. And I'll speculate based on some of what we've seen in the briefs, which is they have some unease, perhaps, with the due process and the procedures followed in tribal courts. Now, that relates to one of the issues raised in my colleague from the states argument about the people not having a right to object, to transfer, to raise due process problems, jurisdiction problems, anything like that. There is absolutely nothing in the record either indicating those procedures don't exist or indicating there were any of those kinds of problems in this case. There was no objection to personal jurisdiction. The father was contacted for every hearing, indicated a desire not to participate, nor to have the child placed with his family. I believe that's on record pages 15 and 22. And that's what we understand to be the issue, is a real unease with how tribal courts function. But one of the important things to understand is that they function in ways that the state would probably recognize. One of the things they overlooked when they say in their brief, there's no provision for transfer. This is a transfer case. This case was transferred from the native village of Huslia over to the native village of Kaltag because they recognized that Kaltag had already exercised jurisdiction over this child when it made a ward of the court. Would there be an ability to transfer into state court as well? Yes, there is an ability to transfer into state court. One of the interesting things, I was looking for cases that might give you an example of this. This does happen. It happens in two ways. Ordinarily, a tribal court, not certain whether its transfer will be accepted to a state court, will tell litigants, this seems like a state case. One of you doesn't want to be here. We're going to dismiss. We suggest you refile. And the place this normally happens is in Bethel. The second place it most commonly happens is in Fairbanks, where people have access to the courts. But there are at least two cases, I believe. One is called Sitton versus native village of Northway. And another one is, both of these are Alaska state cases. One, I believe, is called JM, which is actually the Caltag case from 1986, where a case was transferred from the tribe directly to the state because one of the parents requested it, because they no longer resided in the village. Now, I think that's important to remember. I'd like to, what's your response to opposing counsel's distinction of the Venati case on the basis that it was a voluntary request, and this involved an involuntary request? Our response is that the court obviously did not consider it outcome determinative, because it didn't mention either way whether this was a voluntary or involuntary situation. You do have the word adoption in there, but I think on page 46 of the state's opening brief, and even they admit one, the implication is that it was voluntary, because the court doesn't actually make any finding on the type of procedure that it was. Adoptions, of course, can be preceded by child in need of aid termination cases like this. And there is no discussion of that, because it's not going to affect the outcome, that tribes are simply going to have jurisdiction over both types of proceedings. Whether or not it involved all members, I believe the court asked a question about that as well. And I think it's important to recognize that even in Venati, not everybody involved there was a member. The adoptive mother was, in fact, from Fort Yukon, and the child was from Venati. And the court doesn't even mention where the father was from. And that's because Congress has already struck the balance and already decided that the jurisdictional hook is not out in the weeds of Montana and evaluating people's relationships, but they set forth the jurisdictional hook in ICWA, that it's the membership of the child. And I believe that the court doesn't have any further questions. Thank you. What is your response to opposing counsel's argument that the various provisions, section 1911A and B, present Congress's intent that the state is supposed to be the primary vehicle for adjudicating non-member tribal domestic issues? Our view is that it's the other way around. In the sense that tribes are given under 1911A, it's confirmed that they have exclusive jurisdiction over their reservation, which I understand is not the issue here. And then the second created a new compulsion, a directive, to transfer cases from the state courts to the tribe. It says nothing in that statutory text, nor is there any case holding, that that transfer provision actually is the sum total of a tribe's jurisdiction over children's matters. So your argument is A is more inclusive, and then B is a carve-out that addresses only those particular situations set forth in B. Correct, correct. And the state is only required to transfer those certain types of proceedings that are listed in that statute. And I draw this solely from the language in the statute and the fact that out of all the thousands and thousands and thousands of vehicle cases that there have been since 1978, not one court has said, that's the sum total of the tribe's jurisdiction, 1911B. It's read exactly as it's written, that you can only ask to transfer in those cases and under those conditions. But they do not create any limit on pre-existing tribal jurisdiction. And if the court has no further questions. It appears not. Thank you, counsel. Thank you very much. Rebuttal. The first point that was made in answer to your question, why was there a change in policy? First up, it was explained in the Attorney General's issue on this point, the earlier opinion, which was issued two years earlier, was correcting a misreading of a state court case, CRH. Second, the state has a duty to investigate cases. And the concern was that the Attorney General opinion basically took out that statutory duty because it would allow the Child Protection Services to transfer without fulfilling their duty to investigate. So it went too far. And also, it's important to note that this ruling doesn't just apply to Caltag. It applies to 229 tribes in Alaska. And there's really nothing to limit this from applying to all the Ninth Circuit cases in states, and the tribes in those states. And it was interesting what was said by opposing counsel, that there's thousands of cases. There are thousands of cases out there, and not one of them is addressing this situation. All the cases address situations either falling under 1911a or initiating in state court. That shows that this is the procedure that's in place. It's not done anywhere. And so Caltag is asking the court to go beyond what any court has held to date and to solve a very unique Alaska problem, which is under ANCSA, there is no reservation status. But it's easily solved by applying under 1918b2 to have the limited borders. There's, I believe I'm out of time, but I would ask the court to, if you rule on the first round, without subject matter jurisdiction, there is no, over a non-member defendant, the remaining issues are moot. Because you can't give recognition to a case that doesn't have subject matter jurisdiction. Thank you. All right. Thank you, counsel. Thank you to both counsel. The case that's argued is submitted for decision by the court.
judges: Farris, Thompson, Rawlinson